## MacDONALD et al. v. UNITED STATES.
### No. 46505.

United States Court of Claims.

May 2, 1949.

M. Walton Hendry, of Washington, D. C., for plaintiff.

D. B. MacGuineas, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen. (William A. Stern, II, of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Judge, and WHITAKER, HOWELL, MADDEN and LITTLETON, Judges.

WHITAKER, Judge.

Plaintiffs, doing business as partners under the name of Tarlton-MacDonald Company, sue to recover the excess amount they had to pay for lumber to construct the Modification Center at Fort Crook, Nebraska, over the amount they say they should have had to pay under the contract. They also sue for the cost of the installation of certain baffle curtains, and they sue for an alleged loss on scrap lumber. (We shall hereafter refer to the partnership as plaintiff.)

The work to be done was under a war contract. It was a rush job. Plaintiff was requested, on May 15, 1942, to submit an offer for the construction of this Modification Center within two days. It agreed to submit the offer within four days. Two days thereafter the plans were furnished plaintiff and within two days after this it submitted a bid by telephone, which was later confirmed by letter. The bid was conditioned upon the agreement by

the Corps of Engineers to "furnish all priority that will be required to enable us to obtain without delay all materials and equipment."

1. Under the contract the plaintiff was required to furnish the labor and materials and do the necessary work to construct the Modification Center, which was a large hangar 351 feet 11 inches long and 160 feet wide, with a vertical clearance of 28 feet above the floor. Plaintiff entered into a contract with the Nebraska Building Supply & Lumber Company to furnish the necessary lumber. It turned out that this company was unable to furnish it when needed and, so, plaintiff secured permission from the defendant's contracting officer to purchase it through the defendant's Central Procurement Agency. This was an agency set up by the defendant to secure lumber and other material from various suppliers. However, these suppliers also were unable to deliver the lumber as soon as it was required.

In this situation the contracting officer instructed plaintiff to procure lumber elsewhere, from whatever source it could be secured, nor was it to cancel the orders placed through the Central Procurement Agency, but it was directed to take such lumber as might be shipped to it through this agency from time to time. The contracting officer agreed that if more lumber was secured from these sources than was necessary to complete the contract, the Government would take the excess off its hands at the prices which it had paid for it.

An excess amount was shipped to the job and the Government, in accordance with its promise, did pay plaintiff for the cost of this excess lumber.

When the contracting officer instructed plaintiff to purchase the lumber from sources other than through the Central Procurement Agency he promised to pay plaintiff whatever amount it cost to do so above what plaintiff would have had to pay to secure it through the Central Procurement Agency. It is for this excess cost that plaintiff sues.

Upon completion of the job the contracting officer gave plaintiff a change order allowing the excess cost of purchasing this lumber from sources other than through the Central Procurement Agency. However, the Division Engineer, the contracting officer's superior, disallowed this excess cost on the ground that it was plaintiff's obligation to secure the lumber from whatever source it could be obtained and at whatever price it was necessary to pay for it, and that, therefore, plaintiff had done nothing more than it was required to do under the contract. He concluded, therefore, that there was no consideration for the issuance of the change order providing for payment of the excess cost, and directed the contracting officer to issue a revised change order.

■ We are of the opinion that the Division Engineer was right. Plaintiff was required to secure the lumber from whatever source it could obtain it and to pay therefor whatever price it had to pay. Plaintiff's contract was for a lump sum and it was required to do whatever might be necessary in order to perform it.

The defendant furnished plaintiff with all the necessary priorities; lumber was scarce; it was hard to obtain; but it was plaintiff's duty to obtain it. It was no part of the contract that plaintiff should secure this lumber through the Central Procurement Agency. This was a permission granted by the contracting officer after the contract had been signed, in order to enable plaintiff to complete its contract within the contract time. Plaintiff had no vested right to secure its lumber through this agency, and when it developed that sufficient lumber could not be secured from this source, it was its obligation under the contract to get it wherever it could at whatever price it had to pay for it.

It follows from this that the Government received from the plaintiff no more than it was entitled to receive and, therefore, that the change order allowing plaintiff more than it was entitled to under the contract was without consideration and, therefore, is unenforceable.

■ Under the instructions of the Division Engineer the contracting officer issued a revised change order eliminating the ex-

cess loss of this lumber. Plaintiff protested against this, but did not perfect its appeal to the head of the department within the thirty days required. The Board of Contract Appeals denied plaintiff's claim on this ground, as well as on the ground that it was not entitled to recover on the merits. It was correct in doing so.

2. Plaintiff's contract called for the installation of a sprinkler system. Later this was deleted from the contract, but the contracting officer required plaintiff to install certain "baffle curtains," contending that they were no part of the sprinkler system. On appeal the contracting officer was reversed by the Board of Contract Appeals and was directed to issue a change order providing for payment for these "baffle curtains."

The required change order was issued. Plaintiff, however, says that the amount allowed in it was insufficient to cover all its costs.

The only proof plaintiff offers in support of this assertion is an estimate it made of its costs. While the defendant's figures are also based on an estimate, we are not convinced that it was less accurate than plaintiff's.

Furthermore, while plaintiff took an appeal from the contracting officer's disallowance of any amount for the baffle curtains, and was sustained, still, the Board of Contract Appeals did not fix the amount plaintiff was entitled to, but directed the contracting officer to compute the amount. If plaintiff was dissatisfied with the amount fixed, it was its obligation to appeal again. This it did not do. For this additional reason we are of opinion it is not entitled to recover.

3. Plaintiff is not entitled to recover on its claim for loss on scrap lumber. Defendant's officers did no more than they should have done in requiring its prompt removal from the site of the work. This the contract required plaintiff to do.

We are of opinion plaintiffs are not entitled to recover. Their petition will be dismissed. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and LITTLETON, Judges, concur.